IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

APPEAL NO. 22-11111

DC NO.: 6:20-cr-57-PGB-LHP-2

---

UNITED STATES OF AMERICA

vs.

STEVEN ABBOUD

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

APPELLANTS INITIAL BRIEF
CRIMINAL CASE

---

MICHAEL W. NIELSEN, ESQUIRE
NIELSEN LAW FIRM
720 WEST STATE ROAD 434
WINTER SPRINGS, FLORIDA 32708
407/327-5865--[FAX 407/327-0384]
ATTORNEY FOR APPELLANT
FLORIDA BAR 0794392
nielsenlaw@cfl.rr.com

## <u>CERTIFICATE OF TYPE</u>

14  Times Roman Numeral

APPEAL NO.: 22-11111-G
United States v. Steven Abboud

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Eleventh Circuit Rules 26.1, 26.1-2, 26.1-3, and 28.2

(b), those listed below are persons interested in the outcome to this case:


1. Abboud, Steven, appellant

2. Byron, Honorable Paul G., United States District Judge

3. Corrigan, Honorable Timothy J., United States District Judge

4. Davidow, Joseph, Esquire

5. Doss, D. Todd, Esquire

6. Gardella, John M., Assistant United States Attorney

7. Nielsen, Michael W., Esquire

8. Phazzer Electronic, Inc.

9. Robinson, Diana

10. Siekkinen, Sean, Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, Steven Abboud, requests oral argument. It is respectfully submitted that argument by counsel familiar with the issues, the facts, and the record on appeal will provide this Honorable Court with assistance in resolving this action.

i

## TABLE OF CONTENTS                          PAGE NO.

CERTIFICATE OF INTERESTED PERSONS………………………………..ci

STATEMENT REGARDING ORAL ARGUMENT …………………………i

TABLE OF CONTENTS …………………………………………………ii,iii

TABLE OF CITATIONS AND OTHER AUTHORITIES…………………..,,iv-vi

STATEMENT OF JURISDICTION…………………………………………vii

STATEMENT OF THE ISSUES …......................................................................1

STATEMENT OF THE CASE………………………………………….........2-13

         a. COURSE OF PROCEEDINGS AND DISPOSITION BELOW…….2

         b. STATEMENT OF THE FACTS…………………………………..3-12

         c. STANDARDS OF REVIEW……………………..………………13

SUMMARY OF ARGUMENT……………………………………………14

ARGUMENT…………………………………………………………………15-42

1.    WHETHER THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SURVIVE A MOTION FOR JUDGMENT OF AQUITTAL OR A CONVICTION OF GUILTY BEYOND A REASONABLE DOUBT.
.

II..    WHETHER UNDER TITLE 18, UNITED STATES CODE, SECTION 3583, PETTY OFFENSES ARE NOT AUTHORIZED FOR THE TRIAL COURT TO IMPOSE SUPERVISED RELEASE AFTER PRISON.

ISSUE I   …………………………………………………………15-35

ISSUE II…………………………………………………. .…35-39

 CONCLUSION………………………………………………40

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT…41

CERTIFICATE OF SERVICE……………………………………. …41

iii

# TABLE OF CITATIONS

United States v. Baldwin,
770 F.2d 1550, (11th Cir. 1998)……………………………………………35

United States v. Bernadine,
237 F.3d 1279, (11th Cir. 2001) ……………………………………………14

Burtis v. Lawther,
53 F.3d 1237 (11th Cir. 1995)……….……………………………………..15

United States v. Brown,
879 F.3d 1231, 1234 (11th Cir. 2018)……………………………………41

Cheff v. Schnackenberg,
384 U.S. 373, 379-380 (1966) ……………………………………………..37

Doctor's Assocs; Inc. v. Reinert & Dunne, P.C.,
191 F.3d 297 (2nd Cir. 1999)………………………………………………32

Falstaff Brewing Corp. v. Miller Brewing Co.,
702 F.2d 770,782 (9th Cir. 1983)…………………………………………35

Frank v. United States,
395 U.S at 147-148 (1969)…………………………………………………37

Taylor v. Hayes,
418 U.S. 488, (1974)……………………………………………………..37

United States v. Hoffman,
710 F.3d 1228,1232 (11th Cir. 2013)……………………………………42

United States. Jourdain,
26 F.3d 127 (8th Cir. 1994)………………………………………………..39

United States v. Lopez Falu,
129 F. Supp 2d, 424 (D.P.R. 2000)……………………………………40

United States v. Pirela Pirela,
809 F.3d 1195 (11th Cir. 2015)………………………………………13

United States v. Diana Robinson,
Case no.: 22-10949-GG……………………………………………..37

RDK Corp. v. Larsen Bailey, Inc.,
2006 U.S. Dist. E.D. Wisconsin (Lexis 53298)………………………32

Romero v. Drummond,
490 F.3d 1234,1242-43 (11th Cir. 2007)……………….……………29

Taser International, Inc. v. Phazzer Electronics, In.
No. 6:16-cv-366-orl-40LRH………………………………………..16

United States v. Thorton,
225 F.3d 665 (9th Cir. 2000)………………………………………39

v

## **OTHER AUTHORITIES**

Title 18, United States Code, Section 3231……………………………………vii

Title 18, United States Code, 3742……………………………………….vii

Title 28, United States Code, 1291…………………………………….vii

Title 18, United States Code, 3691…………………………………….1

Title 18, United States Code, Section 3583…………………………….1

Federal Rule Civil Procedure 65 (d)(2)…………………………………4

Federal Rule Civil Procedure 65 (d)(2)(A) or (B)……………………...32

Federal Rule Criminal Procedure 29…………………………………….2

Title 18, United States Code, Section 19…………………………….38

Title 18, United States Code, Section 3559(a)……………………….38

Title 18, United States Code, Section 3583 (b)(3)………………………39

Title 18, United States Code, Section 3583 (e )(3)…………………………41

## **<u>STATEMENT OF JURISDICTION</u>**

This is an appeal from the final judgment of conviction entered by the United States District Court, Middle District of Florida, Orlando Division, on December 27, 2021 (R1-107) and the sentence imposed on March 24, 2022 (R1-137). The District Court had original jurisdiction under Title 18, United States Code, Section 3231 and Title 18, United States Code, Section 3742. The notice of appeal was timely filed (R1-150). Jurisdiction now lies with this Honorable Court under Title 28, United States Code, Section 1291.

## STATEMENT OF THE ISSUES

I.    WHETHER THE EVIDENCE AT TRIAL WAS INSUFFICIENT
    TO SURVIVE THE JUDGMENT OF AQUITAL ARGUMENT
    OR A CONVICTION OF GUILT BEYOND A REASONABLE
    DOUBT.


II.    WHETHER UNDER TITLE 18, UNITED STATES CODE,
    SECTION 3583, PETTY OFFENSES ARE NOT AUTHORIZED
    FOR THE TRIAL COURT TO IMPOSE SUPERVISED RELEASE
    AFTER PRISON.

## STATEMENT OF THE CASE

## A.    COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW:

Appellant, Steven Abboud, was served with a notice of criminal contempt proceedings and show cause order on March 16, 2020 (R1-1). In addition, the Phazzer Electronics Corporation and Co-Defendant, Daina Robinson, were also served with the same notice of criminal contempt (R1-1).

On October 18, 2021, and October 19, 2021, a bench trial took place in front of the Honorable Paul Byron, District Court Judge in Orlando, Florida (R1-83-85).

On November 19, 2021, the Appellant filed in writing a Rule 29 motion for judgement of acquittal and closing argument (R1-105). On December 27, 2021, the District Court judge filed in writing an opinion and judgment finding the Appellant guilty of criminal contempt and denying the motion for judgment of acquittal made pursuant to rule 29 (R1-10).

On March 24, 2022, the trial judge sentenced the Defendant to five months in prison followed by one year of supervised release (R1-137). The supervised release portion of the sentence was stayed by this Honorable Court pursuant to Appellants motion to stay on April 12, 2023 (R1-164).

2

### B.    STATEMENT OF THE FACTS

### 1.    Civil Case

In 2016, Taser International sued Phazzer Electronics for patent and trademark infringement, false advertising, and unfair competition.  During the Appellant's trial the district court took judicial notice of the docket and filings in the civil case in which the injunction was entered, No. 6:16-cv-366-Orl-40-LRH, See doc. 75; Doc. 93 at 16.

In July 2017, the district court sanctioned Phazzer Electronics for failing to cooperate in discovery and trying to delay the litigation. (Civ. Doc. 183). It entered a default judgment and permanent injunction against Phazzer Electronics. The injunction prohibited: Phazzer [Electronics] and its officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer [Electronics] or its officers, agents, servants, employees or attorneys…from:

    a.    Making or causing to be made,

    b.    Using or causing to be used,

    c.    Officering for sale, or causing to be offered for sale,

d.      Selling or causing to be sold,

e.      Donating or causing to be donated,

f.      Distributing or causing to be distributed,

g.      Importing or causing to be imported,

h.      Exporting or causing to be exported

The Phazzer Enforcer CEW… and Phazzer product numbers 1DC15, 1-DC21, 1-DC25, 1-DC21-SIDT, 1-PB30, 1-PB8F, 1-PB15943, 1-RB30, 1-PA30, 1-LOWIMPT2015…(Civ. Doc, 183-11-14).

The district court's language extending the injunction to bind Phazzer Electronics "officer, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with Phazzer [Electronics] or its officers, agents, servants, employees, or attorneys" is taken directly from Federal Rule of Civil Procedure 65 (d)(2), which controls who may be bound by a federal injunction.

In May 2018, the district court found Phazzer Electronics and its executive officer, Mr. Abboud, to be civil contempt for continuing to sell enjoined products. (Civ. Doc, 271). The district court declined to impose monetary sanctions but warned that any continued violations of the injunction

4

would result in criminal contempt proceedings. (id. at 9).

### 2.   <u>**Criminal Case**</u>

Nearly two years later, in March 2020, the district court filed a Notice of Criminal Contempt and Show Cause Order, (R1-1). In the notice, the district court found probable cause that Ms. Robinson, along with Mr. Abboud and Phazzer Electronics, had willfully violated the injunction thus committed criminal contempt, in violation of Title 18 United states Code § 401 (3). (R1-1-4).

The district court based its probable cause determination on the following. In March 2019, former police chief Richard Beary placed an order on www.phazzerusa.com, a website for which Ms. Robinson had registered a domain name. Although the website did not depict enjoined products, the package Mr. Beary received possibly contained one. (R1-1).

In its notice, the district court limited the potential sentence for the contempt to six months and declared the Appellant and his Co-Defendants would have a bench trial:

The court may try criminal contempt without a jury

5

when the actual penalty imposed does not exceed

 six months imprisonment. See Taylor v. Hayes,

418 U.S. 488, 495 (1974). Since the Court

will not impose a sentence exceeding six months

imprisonment, in the event of conviction, Phazzer

 Electronics, Inc., Steven Abboud, and Diana

Robinson's criminal contempt trial will be to the

 bench, (R1-1).

3.    **The Bench Trial**

The matter proceeded to a two-day bench trial. (R1-83,85). The following facts were established at trial.

Kirk French and his wife formed Phazzer Electronics in 2008 or 2009. (R1-95-4). He was approached by the Appellant to start the company. (R1-95-5). Phazzer Electronics' only shareholders are Mr. French and his wife. (R1-95-29). Although the Frenches owned Phazzer Electronics, Mr. French, who was a member of the military, had less involvement in the company. The only financial benefit he received was that the company paid his monthly cell phone

6

bill. (R1-95-5). In early 2017, after he retired from the military, he began to take a more active role in Phazzer Electronics and draw a salary. (R1-95-23,45).

In the beginning, the Appellant and Diane Robinson ran the daily operations and made most of the company's decisions. (R1-95-6).  Mr. Abboud was paid for his work as an employee of Phazzer Electronics, (R1-95-6,57).

Ms. Robinson was also a salaried employee of Phazzer Electronics. (R1-95-6,56). She filled an administrative role. She answered the phones, shipped inventory, and also answered some technical questions. (R1-95-10,11).

There is a false assertion that was made that the Appellant did not put his name as owner for the purpose of avoiding it as a marital property because of a possible divorce. The testimony at trial was that Mr. French was intending to be an active part of the company. (R1-95-42). The trial testimony by Mr. French is that it was only one of the reasons the appellant's name was not listed as owner. (R1-95-42).

7

After the district court entered the 2017 injunction prohibiting Phazzer Electronics, its employees and agents, and those working in concert with it from selling certain enjoined products, the Appellant resigned from his position with Phazzer Electronics. (R1-95-11). He continued working for the company as a consultant until 2018. (R1-95-11).  However, after the May 2018 civil contempt order, Phazzer Electronics shut down completely and no longer had any authorized employees or agents. (R1-95-32).

Mr. French could not recall exactly when the Appellant stopped working as a consultant, but it was in 2018. And the Appellant About had certainly stopped by October 2018, when no one was involved with Phazzer Electronics except for the French's. (R1-95-26,27).

Mr. French could not remember exactly when Ms. Robinson stopped working for Phazzer Electronics. (R1-95-12). But in September 2018, Ms. Robinson, writing on behalf of a different company, licensor Phazzer IP, terminated Phazzer Electronics license to sell Phazzer-branded products. (R1-95-16). At that point, Phazzer Electronics was over. The company closed its books in 2018, and, by no later than October 2018, the only people who remained involved in Phazzer Electronics were Mr. French and hs wife.

8

(R1-95-26). No one worked for Phazzer Electronics in the last two months of 2018 or for any of 2019. (R1-95-20). The company was dead. (R1-95-5,19).

Around the same time that Phazzer Electronics shut down, the Appellant approached Uriel Binyamin about opening a company to sell Phazzer-branded products in the United States. (R1-93-22). The two had met several years earlier, when Mr. Binyamin, searching for less lethal weapons for the Israeli Police Force, had found Phazzer online. (R1-93-19,20). Mr. Binyamin already had his own company URB; that was a company assisting other companies fulfilling orders.

The Appellant provided Mr. Binyamin with several names and website options; Mr. Binyamin chose Phazzer-USA. (R1-93-23). The Appellant helped Mr. Binyamin open the business and connected him with Mike Coyne, tech support for the website. (R1-93-30). Mr. Binyamin also received from "Phazzer Florida"—a term he used for Mr. Abboud and Ms. Robinson –a user name and password so that Phazzer-USA could order products directly from Double Dragon, the manufacturer in Taiwan. (R1-93-23,24).

Phazzer-USA formed in September 2018. Mr. Binyamin and his wife were the owners and Mr. Binyamin its only employee. In early October 2018,

9

Ms. Robinson, writing on behalf of Phazzer IP, coordinated set-up of the website. (R1-93-33). And writing on behalf of Phazzer Global, she confirmed shipment of accessories to Phazzer-USA. (R1-93-31-33). Phazzer Global sold Phazzar products outside the U.S.A.  Mr. Coyne made sure that any products covered by the 2017 injunction were not visible to customers on the website. (R1-93-200-201). In November 2018, Phazzer-USA ordered Phazzer products from Double Dragon and began to sell them. (R1-93-37,48,51).  Phazzer-USA received orders through its website starting in November 2018 and continued through August 2019. (R1-86-7) and (R1-86-9).

Phazzer-USA had three types of expenses. First, it ordered stun guns and cartridges directly from Double Dragon. (R1-93-24-31). Second, it ordered non-gun related accessories, like chargers and goggles, from "Phazzer Florida." (R1-93-31,52). Third, it paid Phazzer IP for the ability to use, and the maintenance of, the Phazzer-USA website. (R1-93-62).

Through her role with Phazzer IP, Ms. Robinson billed Phazzar-USA for the website and its maintenance, and she helped Phazzer-USA coordinate the shipment of and payment for products that it had ordered through Double

10

Dragon. (R1-93-47,60) and (R1-86-7). Mr. Binyamin would also contact Ms. Robinson if there was a problem with billing or accessories shipments. (R1-93-118).

The Appellant was not an employee of Phazzer-USA and did not run the business Phazzer-USA which was owned by Mr. Binyamin. Mr. Binyamin stocked the products, decided what to store, when to purchase, and what to ship. (R1-93-100-101).  This is exactly what he did for his other company, URB.

In March 2019, Richard Beary, a former police chief, received an email from Phazzer-USA advertising Phazzer products for law enforcement. (R1-93-147). He asked Axon Enterprises, formerly Taser, if it wanted him to order the product. (R1-93-150). After the company agreed, he clicked through the website, which showed a "law enforcement complete set" with no model number, and placed an order, which Mr. Binyamin confirmed. (R1-93-151-152).

Mr. Binyamin did not discuss Mr. Beary's order with the Appellant.

11

(R1-93-114). He selected the product from his current stock and shipped it to Mr. Beary. (R1-93-115). As he explained, all stun guns were the same to him and he did not distinguish between models. (R1-93-129). Once Mr. Beary received the package, he sent it to Axon. Later that year after receiving a complaint in a 2019 lawsuit initated by Axon, Mr. Binyamin closed Phazzer-USA. (R1-93-120).

Mr. Abboud's motion for judgment of acquittal and closing argument argued that in addition to him not being a party to the injunction, the evidence did not support that the Appellant willfully violated the injunction, (R1-105).

In addition, the trial court conducted an examination of Mr. French after the United States attorney concluded his direct examination. The Appellant believes that was not fair to him. The Appellant argues that the trial court effectively became an adversary and not a neutral decision maker. The Appellant, at trial, felt as though the trial court was intentionally assisting the government (R1-95-41-56).

The Appellant was sentenced to five months prison followed by one year of supervised release, (R1-137).

After the trial, the Appellant moved for a judgment of acquittal and verdict of not guilty, (R1-105). Among other things, The Appellant argued that he could not be convicted of contempt because he was a third party who was not bound by the injunction at the relevant time. Specifically, he argued that Phazzer Electronics did not employ him when the alleged contempt occurred and in fact was no longer operating, (R1-105-3).

The district court denied Mr. Abboud's motion for acquittal and not guilty, (R1-107). It found, without specifying the time period, that Ms. Robinson was an employee and agent of Phazzer Electronics. The trial court also found that he violated the injunction because he coordinated invoices and shipments of products, some of which were enjoined, between Phazzer-USA and Double Dragon from November 2018 through mid-2019, (R1-107-11,12).

## C.  <u>STANDARDS OF REVIEW</u>

This Court reviews de novo legal questions, including the denial of a motion for judgment of acquittal based on sufficiency of the evidence. See <u>United States v. Pirela Pirela</u>, 809 F.3d 1195, 1198 (11th Cir. 2015). "In reviewing the sufficiency of the evidence in support of a Title 18 U.S.C. Section 401(3)

13

violation, [this Court] determine[s] whether the evidence, when construed in the light most favorable to the government, would permit a jury to find the Defendant guilty beyond a reasonable doubt." United States v. Bernadine, 237 F.3d 1279, 1281-82 (11th Cir. 2001). "A district court's bench trial findings of fact are reviewed for clear error." Pirela Pirela, 809 F.3d at 1199.

This Court reviews de novo the legality of a criminal sentence. United States v. Brown, 879 F.3d 1231, 1234 (11th Cir. 2018).

The Appellant argues the case was not proven beyond a reasonable doubt and a lack of sufficiency of the evidence to convict, is to be reviewed De Novo.

14

## SUMMARY OF THE ARGUMENT

I.    The Appellant was found guilty and his motion for judgment of acquittal was denied by the trial court after a two-day bench trial.  The charge at trial was a criminal contempt charge for violating a civil injunction put in place by the trial court earlier.  The Appellant should have been found not guilty by the trial court or should have had his motion for judgment of acquittal granted by the Honorable Court.  The Appellant's Co-Defendant at trial, Diana Robinson, has recently had her conviction and sentence vacated by this Honorable Court on same facts as the Appellant.

II.    The Appellant argues that based upon the criminal contempt charge being a petty offense that supervised release following his prison sentence was improper. The Honorable Court has already granted Appellants motion to stay the supervised release portion of his sentence. (R1-164).

15

**ARGUMENT**

I.    WHETHER THE EVIDENCE AT TRIAL WAS
INSUFFICIENT TO SURVIVE A MOTION FOR
JUDMENT OF ACQUITTAL OR A CONVICTION OF
GUILTY BEYOND A REASONABLE DOUBT.

Mr. Abboud is not guilty of the charge of Criminal Contempt. Simply put, there was no evidence presented at trial Mr. Abboud violated a lawful order of the Court, or if there was a violation, that he did so willingly. More specifically, there is no evidence he willfully participated in the selling of infringed products as alleged in this Court's Notice of Criminal Contempt Proceedings and Show Cause Order filed March 16, 2020.  The trial court also should have granted his motion for judgment of acquittal.

The Contempt Charge arises out of a July 21, 2017, Injunction entered in Taser International, Inc. v. Phazzer Electronics, Inc., No. 6:16-cv-366-Orl-40LRH (civ. Doc 183). A later order filed on May 4, 2018, further outlines the condition of the injunction, (civ. Doc.271).

The allegations bringing forth the Contempt Charge are the District Court's

16

finding that probable cause exists to believe that Phazzer, the Appellant, and Ms. Robinson, trial Co-Defendant, continued to sell infringing products in violation of the Court's Injunction, (R1-1). However the evidence at trial presented transactions by two non-parties to the Civil Case.

The two parties involved in the transaction outlined in the Contempt Charge are Richard Beary and Uriel Binyamin. In March 2019, Mr. Beary placed an order on https://www.phazzerusa.com, a website exclusively owned by Mr. Binyamin, for a product that was not enjoined by the Injunction. Mr. Binyamin, who received the order and possessed an infringed product most likely acquired in June 2017-before the injunction- then packaged and shipped a different product than what was ordered on the website to Mr. Beary. Mr. Beary in turn shipped the product to a Taser employee, Richad Chiles. When Mr. Chiles opened the package, it contained a Phazzer Enforcer, serial number A0010KE0617, and cartridges.

On October 18, 2021, a trial was held regarding the Contempt Charge. The parties agreed to submit written Rule 29 Motions for Judgment of Acquittal and closing arguments. The evidence at trial clearly showed Mr. Binyamin operated his company independently of Mr. Abboud. Mr. Abboud was not

17

involved in the distribution of the infringing product shipped by Mr. Binyamin or any of the orders placed on Mr. Binyamin's website.

Further, the evidence did not establish Mr. Abboud as an officer, agent, employee, servant or attorney, or a person acting in concert with Phazzer Electronics, LLC at the times relevant to the Contempt Charge. Phazzer Electronics, LLC is the only named party subject to the Injunction. The evidence showed without question that Phazzer Electronic, LLC is a defunct entity, not doing business, and existed in name only at all times relevant to the current Contempt Charge. Therefore, the Court should have found the Defendant to be not guilty.

Mr. Binyamin first reached out to the Phazzer company after researching its products. It is not clear which Phazzar company Mr. Binyamin reached out to, but he purchased 10-15 Phazzer CEWs directly from the manufacturer Double Dragon for a potential sale in Israel that did not work out. (R1-93-20). In 2017 a second attempt was made to negotiate a deal with Israeli Police involving Phazzer products, but that also did not work out. (R1-93-21). Mr. Binyamin testified he did place an order in 2017 with Double Dragon, who manufactured the CEWs and cartridges, but believes it was "canceled…if I recall correctly."

18

(R1-93-22).

It was later revealed that a Double Dragon invoice existed from June 2017 that Mr. Binyamin, through his other company URB ordered 52 Phazzer Enforcers, yellow, with a product number of 1-EYLW. The serial numbers of these enforcers were A0001KE0617-A0052KE0617. (R1-86-33). This invoice also contained 700 Phazzer 15" Dart Ammo with a product number of 1-DC15, (Id.). The Phazzer Enforcer that became the main focus of this trial was serial number A0010KE0617, clearly number 10 in a series of 1-52 which was part of the June 2017 order from Double Dragon to Uriel Benyamin of UBR.

At a later date Mr. Binyamin created Phazzer-USA, LLC with his wife. (R1-93-22). Phazzer-USA is a virtual business and it operates out of Mr. Binyamin's home in Maryland. Phazzer-USA had no employees, other than Mr. Binyamin. (R1-93-85 ). The Appellant had no ownership interest in Phazzer-USA. (R1-93-87). Mr. Binyamin acknowledged he was one of only

19

four licensees and that he had to pay Phazzer IP for use of the name. (R1-93-136). There is no indication that he paid The Appellant for the ability to use the name. Mr. Abboud simply helped him pick out a name.

Mr. Binyamin confirmed he was in charge of the payments and shipping for his clients. Mr. Binyamin further testified that he worked with Mike Coyne to set up the online store, (R1-93-120,121). He acknowledged that the Appellant was not part of his company, and that Phazzer Global, which Mr. Abboud was a part of, and Phazzer-USA dd not intermingle, and were two completely separate companies. (R1-93-122). Neither the Appellant, nor Phazzer Electronics, formed Phazzer-USA for Mr. Binyamin. (R1-93-122). Mr. Binyamin never paid the Appellant or Phazzer Electronics. Mr. Binyamin took guesses at best, to the business relationships between Ms. Robinson and the Appellant. (R1-93-48).

Mr. Binyamin stated he did not have anything to do with the products on the website. Further, he indicated that Mr. Coyne served as IT support and set up the welcome kit for new Phazzer licensees. (R1-93-136). The Appellant was not involved in this process, his name does not appear on any of the set-up documents. (R1-93-133). At trial Mr. Binyamin was questioned about the

20

products, and his impression of the products after receiving a press release via email. The press release in question, dated October 10, 2018, from barb@phazzerglobal.com, focused on NEW products. (R1-93-44) (R1-86-4). It has already been established that Mr. Binyamin was in possession of Phazzer Enforcers and cartridges for some time as part of URB, prior to becoming Phazzer-USA. In essence, the whole press release/email chain is a red herring, looking to point blame to the Appellant where none exists.

As with the prior relationship with Double Dragon as part of URB, Mr. Binyamin placed his orders directly to Double Dragon, and paid Double Dragon for the product. (R1-93-23). The shipments from Double Dragon would come directly to him (Id.). Mr. Binyamin specifically stated he did not negotiate this deal with the Appellant because there was nothing to negotiate. The Appellant, as evidenced by several email chains simply passed on the leads to Mr. Binyamin. When an order mistakenly went to the defunct Phazzer Electronics, it was sent to Mr. Binyamin to fill. Further, Mr. Binyamin had previously placed orders, directly with Double Dragon and every time he placed an order, it came from Double Dragon. (R1-93-24). Mr. Binyamin only bought CEWs and cartridges from Double Dragon in Taiwan. The only

21

products he received from Florida were other accessories such as pouches and power supply. (R1-93-31). In fact, he verified that the first shipment he received on October 1, 2018, as indicated in Government Exhibit 2, was not from Double Dragon at all, but accessories from Florida. (R1-86-2).

Mr. Binyamin confirmed it was his sole discretion as to how to handle, store, order, purchase, and fulfill orders. (R1-93-101). What became abundantly clear, was that an order was placed for 100 1-EYLW Phazzer Enforcer Complete Sets and 700 1-D15 Phazzer Dart pro Cartridges on November 9, 2018, which indicated that the payment was "2 years PAID". (R1-86-5). Mr. Binyamin had no explanation for why this would say paid. It was because it contained the same inventory as the June 2017 order placed by Mr. Binyamin as part of URB as evidenced in Government's Exhibit 33, the invoice from Double Dragon to URB. The timing, although not quite two years, explains his possession of the exact product that was later shipped to Mr. Beary, (R1-86-33).

Further it is abundantly clear that Mr. Binyamin's business practices were lackadaisical. He stated he did not record serial numbers, and did not care what the stock was, just about the quantity. (R1-93-107,114). He testified he did not

22

keep track of old stock versus new stock, he would just fulfill the orders. (R1-93-107,114).

The Government tried to have Mr. Binyamin testify he ordered these items pursuant to his business relationship with the Appellant; Mr. Binyamin did not state this. (R1-93-52). He simply stated he needed to fulfill his orders. Additionally, Mr. Binyamin was asked if he discussed these issues in the "beginning" but "beginning" was never clarified. The beginning of Mr. Binyamin and Mr. Abboud's relationship is 2013-2014 (R1-93-19).

In March of 2019 trial witness, Richard Beary, received an unsolicited email from Phazzer-USA, Mr. Binyamin's company. (R1-93-148) and (R1-86-11). In response, he placed an order on the phazzer-usa.com website for a law enforcement set as that was featured in the email, and he bought as directed to by Taser. (R1-93-151) and (R1-86-7). There were no model numbers on the product he ordered off the website. (R1-93-151). It is important it was not a Phazzer Enforcer that was advertised. (R1-93-157).

Mr. Binyamin testified that once the order was received by him, he pulled the product off the shelf, he tested the item, he created the USPS labels, and he shipped the product. (R1-93-66). Mr. Binyamin testified he was not aware of

23

any differences between what was on the website and what he pulled from stock and shipped, and he did not check. (R1-93-139).  Mr. Binyamin had stock on hand when Mr. Beary ordered the CEW from him (R1-93-128).

Mr. Bryan Chiles of Taser received the unopened package shipped by Phazzer-USA from Mr. Beary. Upon receipt he opened and analyzed the package as depicted in Government's Exhibit 14 and 15, (R1-86-14,15). These exhibits contained photographs of the contents of the package, a Phazzer Enforcer and cartridges, as well as photographs of cartridges taken from the website. It is unclear from Mr. Chiles' testimony where and when he obtained the photographs from the website, if they were current, pre-injunction or post-injunction. (R1-93-167,173). The Appellant argues cartridges sent by Mr. Binyamin to Mr. Beary were never quite established as infringing product in violation of the injunction. There was no expert witness who testified during trial that anything was, in fact, infringing product.

Mr. Chiles did confirm the serial number of the Phazzer Enforcer that was received. He confirmed that the number on the enforcer he received appeared to be 10 in the group of the Enforcers ordered by Mr. Binyamin from Double Dragon when he was doing business as URB in June 2017. (R1-93-177).

24

The Appellant argues that neither Phazzer Electronics nor the Appellant ever had a hand in this transaction. Mr. Beary confirmed time and again that it was Phazzer-USA who solicited him and where he placed the order. (R1-93-156). Mr. Binyamin confirmed time and again that he was the one who handled the orders from start to finish. Not only for this order, but for all of them. (R1-93-130-131). This is the catalyst for the charge against Mr. Abboud, at trial yet here is nothing linking him to this sale. When Mr. Binyamin had issues with Double Dragon, he contacted Double Dragon. Not the Appellant. (R1-93-73). He specifically was asked if he went through Ms. Robinson or the Appellant and there was never any indication that the appellant was involved with his communications with Double Dragon. (R1-93-74,75).

The Government admitted Exhibit 21 as possible admissions of the Appellant. (R1-86-21). It is unclear how this is an admission. The Appellant is clearly informing interested parties that there will be an end to the Injunction on October 15, 2019. By all accounts, this is accurate information. This is not an admission of guilt by the Appellant. The Appellant was a businessman, in the business of selling Phazzer products. There is nothing in this email

25

indicating he is violating any part of the Injunction. Certainly, one could not interpret a celebratory email to a nefarious purpose meant to circumvent the Injunction.  However, using the exclusion of beyond every reasonable doubt standard, there are multiple very legal interpretations.

Mr. Binyamin stopped selling Phazzer-USA products in August 2019. Phazzer-USA got notice from a lawsuit against Phazzer-USA. Mr. Binyamin hired a lawyer to tell Taser/Axon he was not going to sell products anymore, (R1-93-78). Mr. Binyamin testified that the owner of Phazzer-USA is Mr. Binyamin's wife and Mr. Binyamin is the employee. Phazzer-USA only was operated out of Maryland and not Florida, (R1-93-84). Mr. Binyamin testified that he never worked for Phazzer Electronics and had no ownership interest in it. (R1-93-87).

Mr. Binyamin also testified that Phazzer-USA was created by Phillpe Lerner for Mr. Binyamin, not the Appellant. (R1-93-89). The record shows that in all the Government exhibits Phazzer Electronics is not involved. It is Phazzer IP only. (R1-93-90). The evidence at trial was that the order from Mr. Beary had nothing to do with Phazzer Electronics. (R1-93-92) and (R1-86-8,9). When Mr. Binyamin filled the order to Mr. Beary, he did not discuss it

26

with the Appellant or discuss it with Phazzer Electronics. (R1-93-114).

Mr. Binyamin further testified that he would not have sold anything he thought violated the civil injunction. (R1-93-116). The testimony was that the Appellant and Phazzer-Golbal and Phazzer-USA did not comingle business at all. The Appellant did not own any of Phazzar-USA, the Appellant did not work for Phazzar-USA and Mr. Binyamin did not work for the Appellant. (R-193-122).

Mr. Coyne, testified regarding his role in setting up the website utilized by Mr. Binyamin's company, Phazzer-USA, and his professional relationships with the Appellant, Ms. Robinson and Kirk French, the owner of Phazzer Electronics. Mr. Coyne confirmed that Phazzer Electronics was in existence at one time, but that it was shut down in October 2018. (R1-93-195).

Originally, Mr. Coyne, an independent contractor, was hired by Mr. Abboud to build websites, around 2016/2017. Mr. Coyne became aware of an Injunction and although he did not know the specifics, he did actively participate in "hiding" products on the website so that they could not be sold. He explained that this essentially meant they took the products offline to come into compliance with the Injunction. (R1-93-200).

27

As part of this process, Mr. Coyne helped to develop product on the website that directed US customers one way, which ultimately led to phazzer-USA.com and international customers to phazzerglobal.com, The Appellant's site. (R1-93-197). Mr. Coyne verified that he helped Mr. Binyamin with his website, set him up with email inboxes and sent the welcome letters. (R1-93-197).

Mr. Kirk French testified that trial, he is the owner of Phazzer electronics, and testified about the company from start to finish. Mr. French testified he founded the company on 2008-2009 along with his wife. In 2018 when the civil injunction occurred they stopped all operations. The Appellant was an employee until he resigned in August 2017, (R1-95-5,11).

Mr. French verified he opened all of the bank accounts, he was the primary account holder and he closed the accounts when the time came. He was the only one, other than his wife, with the power to control the bank accounts. His personal accountant did the taxes for Phazzer Electronics. There are no other shareholders, including the Appellant, Ms. Robinson, and Mr. Binyamin. Further, there is no association between Phazzer Electronics and Phazzer-

USA. Mr. Frensh verified that Phazzer Electronics had no hand in the sale of the CEW and cartridges to Mr. Beary. (R1-95-24,29).

In a letter dated September 25, 2018, Phazzer IP notified Mr. French and Phazzer Electronics that the Trademark License Agreement between the two parties was being terminated. (R1-86-18). This letter is from Ms. Robinson of Phazzer IP. There is no indication from any of the evidence presented at trial that anyone other than Ms. Robinson is part of Phazzer IP, other than assumptions. The Appellant argues the elements of criminal contempt were not met, and the Appellant should have been found not guilty or had is motion for judgment of acquittal granted (R1-105).

The three elements of criminal contempt are (1) a lawful and reasonably specific order that (2) the Defendant has violated (3) willfully. Romero v. Drummand, 490 F. 3d 1234, 1242-43 (11th Cir 2007); citing United States v. Bernardine, 237 F.3d 1279, 1282 (11th Cir. 2001); and 18 U.S.C. § 401(3).

The Appellant argues the trial should have found him not guilty as the evidence presented at trial was insufficient to sustain a conviction. Further, when the standard of beyond a reasonable doubt is applied to each element of the Contempt Charge, the only just verdict is that of not guilty. In addition, his

29

motion for acquittal should have been granted.

In Defense Exhibit 3, Document 300 of the Civil Case, an order was entered by the United States Court of Appeals specifically regarding the Injunction in this case. (R1-87-3). While the 11th Circuit upheld the Injunction, in the Conclusion of the opinion, the court stated:

> We have considered Phazzer's remaining arguments and find them unpersuasive. Because the district court did not abuse its discretion in entering default judgment against Phazzer, and because we interpret the resulting permanent injunction as limited to resolving disputes between *these* parties with respect to the particular products at issue, we affirm the district court's order imposing sanctions in its entirety (emphasis added).

The appellate court made it clear that the Injunction only applied to Taser International, Inc. and Phazzer Electronics, Inc. They are the only named parties. Neither the Appellant nor Ms. Robinson are named parties. Mr. Binyamin is not a named party. Phazzer Global, Phazzer IP, or any other Phazzer are not named parties.

30

Further, in Defense Exhibit 4, document 374 from the Civil Case, Phazzer Electronics moved to stay these proceedings due to a rejection of the Patent Trial and Appeal Board that invalidated a portion of Taser's claims in the original petition in the Civil Case. This Court denied the motion and in that order allowed the Appellant to be interpleaded as a party. (R1-87-5). This is important because while the Appellant was allowed to be interpleaded, the corporate veil of Phazzer Electronics was not pierced. No evidence was presented during trial that the Phazzer Electronics corporate veil has been pierced.

As a matter of law, pursuant to USCS Fed R. Civ. Pro. 65(d)(2) regarding the Contents and Scope of Every Injunction and Restraining Order states:

Person Bound: The Order binds only the following who receive actual notice of it by personal service or otherwise:

(A) The parties;

(B) The parties 'officers, agents, servants, employees, and attorneys;

(C) Other persons who are in active concert or participation with anyone

described in Rule 65(d)(2)(A) or (B).

Although it's another jurisdictions case in, <u>RDK Corp., v. Larsen Balery, Inc</u>., 2006 US Dist. E.D. Wisconsin (Lexis 53298, WL 2168707), the court went through a detailed explanation of Rule 65(d) and explains that an agent is bound by any injunction against his principal while acting in that capacity. The court went on to explain that as between two parties, Rule 65(d) by its items does not allow an injunction against a named agent to bar an unnamed principal from actions. Additionally, the mere fact of a master/servant or principal/agent, without more is insufficient to establish that persons were in active concert  for purposes of Rule 65(d). id. citing <u>Doctor's Assocs., Inc. v Reinert & Duree, P.C</u>., 191 F.3d 297 (2d Cir. 1999).

The Appellant argues that Mr. Binyamin is not a party to the Injunction. And neither is he. The Appellant is not a successor in interest to Phazzer Electronics, the named party. The evidence was undisputed that he left the company long before any of the activity subject to the Contempt Charge took place. The corporate veil of Phazzer electronics has not been pierced. Thus, it is impossible for him to aid or abet the named party to subvert the Injunction.

As such, any actions taken by Mr. Binyamin are not in violation of the Injunction and the Appellant should not be brought in simply by association with Mr. Binyamin. This is true when applying the standard for a Rule 29 Motion but even more so when applying the more stringent standard of beyond a reasonable doubt. Guilt by association is simply not enough.

The Appellant argues an important fact surrounding Uriel Binyamin is that prior to becoming Phazzer-USA, he placed at least two orders with Double Dragon. One that he received 10-15 units, one he believes he canceled. This testimony regarding the cancelation testimony is conflicting with the evidence presented in the case at trial. There is a June 2017 invoice to Mr. Binyamin from Double Dragon containing the serial number of the Phazzer Enforcer later received by Mr. Chiles through Mr. Beary.

It became clear during his testimony that his business practices of reading emails or keeping track of products were sometimes conveniently forgotten. Just like the emails he didn't read, or the products that he did not track. Because Mr. Binyamin did not keep accurate records, that cannot translate into the Appellant's violation of the injunction.

33

The evidence is uncontroverted that he ordered the Enforcers in June 2017. It is clear that he later had an invoice with where the product said "2years PAID" for which he had no explanation. Instead of the Appellant somehow being involved, the evidence fits that Mr. Binyamin had that particular Enforcer in stock since before the injunction. Mr. Binyamin stated he didn't pay any attention to what the products were. He just filled the orders and did not pay close attention. The only things he received from Florida are accessories as he indicated.

This is simply not a coincidence and shows the Appellant did not violate the Injunction with this specific product, or any others. There simply was no evidence at trial that Mr. Abboud, with the March 2019 order or the subsequent orders for products on the Phazzer-USA website violated the Injunction. This is reasonable doubt and should equal not guilty.

To convict an accused of criminal contempt, the government must establish that the court entered a lawful order of reasonable specificity that the contemnor willfully violated, United States v. Bernardine, 237 F.3d 1279, 1282 (11th Cir.. 2001). Even if the trial found that Appellant was involved

34

somehow in the Phazzer-USA website, it is clear that there were no infringing products on the website, and if there were, every effort was made to remove them. Appellant argues there was nothing illegal about the products on the website. Mr. Coyne made it clear that they made every effort to "hide" infringed product from public view. If something got through or sent to the wrong address, the Appellant immediately notified him to fix it, in no uncertain terms. In criminal contempt cases, willfulness "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." United States v. Baldwin, 770 F.2d 1550, (11th Cir. 1985), citing Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir. 1983). If there was a mistake on the website, or orders were sent to the wrong email address, that is not enough to establish willfulness beyond a reasonable doubt and the Appellant should have been found not guilty or his judgment of acquittal motion should have been granted.

The Appellant argues the Government evidence seemed to focus on creating an environment where all things Phazzer are somehow illegal. Whether or not the Appellant and Mr. French communicated is not relevant, according to the Government.

35

It is clear that Mr. French intended to take the more active role in Phazzer Electronics once he retired. Unfortunately, the Injunction came into effect while that process was taking shape, forcing the closing of the company. Why it started is not as important as the fact of where it was in 2019, for purposes of the Contempt Charge. Simply it does not exist and just because the name Phazzer is in it, does not mean it is the root of all things Phazzer. The Appellant works for Phazzer Global. Again, just because the name Phazzer is in it, does not mean that he was operating in an illegal manner.

When analyzing all of the testimony and evidence in the case, whether applying the standard under Rule 29 or the stricter standard of proof beyond a reasonable doubt, the Government did not meet its burden. The Appellant was not a party to the Injunction, and certainly did not violate it, willingly or otherwise. The Appellant should have been granted a judgment of acquittal or found not guilty by the trial court.

In this Honorable Court there is very recent precedent that can be followed. The Appellants Co-Defendant at trial, Diana Robinson, has already had her appeal of the criminal contempt conviction ruled upon by this Honorable

36

Court. In the case of <u>United States of America v. Diana Robinson</u>, Appellant,

case no.: 22-10949GG, her conviction was vacated on September 28, 2023, in

this Honorable Court. The Appellant, Mr. Abboud, argues the result for his

appeal should be the exact same as Appellant Diana Robinson, based upon the

lack of evidence presented at trial.

II.    WHETHER UNDER TITLE 18, UNITED STATES CODE, SECTION
       3583, PETTY OFFENSES ARE NOT AUTHORIZED FOR THE
       TRIAL COURT TO IMPOSE SUPERVISED RELEASE AFTER
       PRISON.

In the trial court's Notice and Show Cause Order, the district court ruled

that the Appellant's contempt conviction would not result in a penalty greater

than six months' imprisonment and that He would not have a jury trial. (R1-1-

2).  A defendant is entitled to a jury trial unless the particular offense can be

classified as 'petty'.  <u>Frank v United States,</u> 395 U.S. at 147-148 (1969).

As the Supreme Court has repeatedly held, when the sentence is limited to

six months' imprisonment, the "criminal contempt of court is a petty offense".

 See, <u>Taylor v. Hayes,</u> 418 US 488, 495(1974).  In <u>Cheff v. Schnackenberg,</u>

37

384 U.S. 373, 379-80 (1966), the court held that petty offenses are those that may be tried without a jury and that contempt offense for which sentence is limited to six months is "petty".

In determining that a contempt conviction subject to a six-month maximum sentence is a "petty offense", the Supreme Court in <u>Cheff</u> relied on 18 U.S.C. § 1, which provided that "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months is a petty offense".  Thus, a contempt offense without a jury trial "can only be treated as 'petty' in the eyes of the statute and [the Court's] prior decisions".  Id. at 380.

Section 1 of Title 18 of the United States Code has been repealed.  But 18 U.S.C. § 19 similarly defines petty offenses as class B and C misdemeanors-those subject to no more than six months' imprisonment-for which, in the case of an individual, the maximum fine is $5,000. 18 U.S.C. § 19 (cross-referencing 18 U.S.C. § 3571(b)(6)); *see* 18 U.S.C. § 3559 (a) (setting maximum terms of imprisonment).

The Supreme Court later confirmed its analogy to a statutory "petty offense" by explaining that a contempt conviction imposed without a jury trial is subject to the same penalties that Congress authorizes for petty offenses.

See <u>Frank</u>, 395 U.S. at 151-52. The court held that penalties presently authorized by Congress for petty offenses…may be imposed in federal criminal contempt cases without a jury trial.

A Defendant convicted of contempt without a jury trial may be sentenced to a six month jail sentence, $5000 fine, or up to five years' probation, see Title 18, U.S.C., § 19, 3559, like other petty offenses.

The Defendant may not, however, be sentenced to a post-imprisonment term of supervision because Congress does not authorize supervised release for petty offenses. See <u>Frank</u>, 395 U.S. at 151-52. Title 18 of the United States Code § 3583, states that the authorized term of supervised release for a misdemeanor "other than a petty offense" is not more than one year. 18 U.S.C. § 3583(b)(3). Thus, Congress has exempted petty offenses from supervised release. See <u>United States v. Thornton</u>, 225 F.3d 665 (Table), at *2 (9th Cir. 2000) (unpublished). The <u>Thornton</u> holding striking petty offender's term of supervised release because 18 U.S.C. § 3583(b)(3) specifically exempts petty offenses from the imposition of supervised release. In <u>United States v Jourdan,</u> 26 F. 3d 127 (Table), at 1(8th Cir. 1994), the court held that

the district court plainly erred when it imposed supervised release for a petty offense.

The Appellant argues that a plain reading of Title 18, U.S.C., § 3583(b)(3) states that supervised release is not available in this case because it involves a petty offense, as argued above, and the cited statute provision explicitly excludes petty offenses from its coverage. In United States v Lopez Falu, 129 F. Supp. 2d 424, 425 (D.P.R. 2000), the court held that since § 3583(b)(3) specifically exempts petty offenses from the imposition of terms of supervised release, we find supervised release to be improper in these cases.

The Appellant argues that because Congress does not authorize supervised release for a petty offense, the Appellant, who was convicted of a "petty offense" of contempt of court without a jury trial and with a maximum prison term of six months, he was not subject to a term of supervised release, see Frank 395 U.S. at 151-152. In Cheff, the court held that when contempt is imposed without a jury trial, the sentence is limited to six months and the contempt is "petty offense", to be treated the same as other offenses that congress deems "petty".

40

The Appellant's sentence of five months prison followed by one year of supervised release could possibly act as sentence more than the six month maximum discussed above (R1-137).  If the Appellant conviction stands, and he violated his supervised release, the District Court could revoke his release and require him to serve in prison all or part of the term of supervised release, 18, U.S.C., § 3583 (e)(3).  The added prison term could result in the Appellant's total imprisonment exceeding six months without having had the right to a jury trial.  That sentence would violate the Sixth Amendment.

The Appellant's contempt conviction, imposed without a jury trial, is a petty offense subject only to a prison term no greater than six months, a $5,000 fine, or up to five years' probation.  Under Supreme Court case law and the relevant statutes, he is not subject to a post-imprisonment term of supervised release.  The District Court therefore, erred in sentencing the Appellant to a one-year term of supervised release.

This court reviews de novo the legality of a criminal sentence, United States v Brown, 879 F.3d 1231(11th Cir. 2018).  Since Appellant's trial, counsel did not object to the supervised release, this issue is subject to plain error review (R1-132).  For an error to be plain, it must be "contrary to explicit

41

statutory provisions or to be on point precedent in the court of the Supreme

Court", <u>United States v Hoffman</u>, 710 F. 3d 1228, 1232 (11th Cir. 2013).

In addition, this Honorable Court has already granted a motion to stay the

supervised release pending the outcome of this appeal, (R1-164). The

Appellant is seeking it become a permanent order of this Honorable Court for

reasons stated above.

## **CONCLUSION**

For the reasons explained above, this court should vacate Mr. Abboud's

conviction and sentence. In the alternative, it should vacate the supervised

release portion of his sentence.

42

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

In accordance with Fed. R. App. P. 32(g)(1), I certify that this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 8,436 words according to Microsoft Word's word count, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

## **CERTIFICATE OF SERVICE**

I certify that on this 4th day of December 2023, a true and correct copy of the foregoing Initial Brief of Appellant was filed using the court's Electronic Case Filing system, which will send notification to Sean Siekkinen, Assistant United States Attorney.

/s/Michael W. Nielsen, Esquire
_____
MICHAEL W. NIELSEN, ESQUIRE
NIELSEN LAW FIRM
720 West State Road 434
Winter Springs, Florida 32708
(407)327-5865 [FAX(407)327-0384]
Attorney for Defendant
Florida Bar No.: 0794392
nielsenlaw@cfl.rr.com

43